NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| ROBERT KWIATKOWSKI, Plaintiff, v. CITY OF PATERSON, et al. Defendants. | Civil Action No. 11-3218 (JLL) (MAH) OPINION |
|---|---|

**LINARES**, District Judge.

This matter comes before the Court by way of Defendants Officer Jason English ("Officer English") and City of Paterson's motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. The Court has considered the submissions made in support of and in opposition to the instant motions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, Defendant Officer English's motion is DENIED and Defendant City of Paterson's motion is GRANTED.

**I.   BACKGROUND**

This Section § 1983 action centers on Robert Kwiatkowski ("Plaintiff") and Defendants' conflicting accounts of Defendant Officer English's pursuit and subsequent arrest of Plaintiff on September 9, 2010. The parties do not dispute that on that date, Plaintiff was on the sidewalk near 709 East 18th Street, Paterson, New Jersey when Officer English questioned Plaintiff from his police car. Def. Officer English's 56.1 Stmt. ¶ 1, ECF No. 45. They also do not dispute that Plaintiff next attempted to flee from Officer English on his bicycle. *Id.* at ¶¶ 2-3. However, the

1

parties dispute almost all other facts concerning Officer English's pursuit and arrest of Plaintiff. Their accounts follow.

A. Plaintiff's Account[1]

Plaintiff maintains that he first encountered Defendant Officer English after exiting a restaurant with a cup of coffee, placing his leaf blower on his back, and preparing to ride his bicycle. Pl.'s Decl. ¶ 3, ECF No. 49-1; Pl. Dep. 28:21–29:2, 93:17–24, December 28, 2012, ECF No. 44; Pl.'s Resp. to Defs.' Interrog. No. 2, ECF No. 45. Officer English, alone at that time, drove alongside Plaintiff in his police car and questioned him. Pl.'s Decl. ¶¶ 3-4; Pl. Dep. 36:24–37:1. Plaintiff reacted by riding his bicycle down the sidewalk. Pl. Dep. 38:1–7. Officer English followed Plaintiff in his police car and repeatedly instructed Plaintiff to pull over. Pl.'s Decl. ¶ 4. However, Plaintiff did not stop. Id. at ¶ 5. According to Plaintiff: "I thought I had a warrant, or some old fines, I did not want to go to Jail . . . ." Id. Plaintiff eventually got off of his bicycle, dropped his leaf blower, ran, and hopped a fence. Pl.'s Decl. ¶ 6; Pl. Dep. 95:12–16. In response, Officer English exited his police car and chased Plaintiff on foot. Pl. Dep. 38:16–23. Officer English allegedly cut his hand while hopping the same fence. Id. at 38:23–39:1. After some time, Plaintiff stopped running and hid beneath a tarp draped over a car in a vacant lot. Id. at 41:20–42:16.

Officer English did not order Plaintiff to come out from beneath the tarp. Pl.'s Decl. ¶ 7; Pl.'s Resp. to Defs.' Interrog. No. 4. Instead, he hit Plaintiff's head twice without warning. Pl. Dep. 45:12–46:1. Because the tarp obstructed Plaintiff's view, Plaintiff did not see Officer English deliver the first blow and is uncertain whether Officer English used his police radio or nightstick to do so. Id. at 44:20–24, 45:23–46:1. This first blow, however, caused Plaintiff to

---

[1] Plaintiff's account is drawn from his declaration, deposition, and interrogatories, all of which have been sworn to or submitted under oath. The Court notes that these documents are largely consistent.

2

fall to the ground and roll out from beneath the tarp, enabling him to see Office English deliver the second blow. *Id.* at 46:13–19. These blows to Plaintiffs head caused severe lacerations. Pl.'s Decl. ¶ 7. Plaintiff maintains that he neither bit nor touched Officer English and that there was no struggle between them. Pl. Dep. 46:8–11, 50:11–17. Plaintiff and Officer English were not alone at the scene. *See id.* at 46:17–19. Officer Otero was there with them and, according to Plaintiff, told Officer English to stop hitting Plaintiff after the second blow. *Id.*\

The Officers handcuffed Plaintiff after subduing him. *Id.* at 46:20–24. They then dragged Plaintiff a couple of feet before lifting him up, causing his knees to scrape against rocks on the ground. *Id.* at 51:20–52:2. Emergency medical technicians later arrived at the scene and bandaged Plaintiff's head. *Id.* at 46:23–24. Another officer then transported Plaintiff to St. Joseph's Hospital, where doctors placed staples in his head. *Id.* at 49:4–14, 51:6–10. Officers English and Otero stayed with Plaintiff in the hospital. *Id.* at 53:3–10. Plaintiff contends that while there, Officer English threatened him about what to say: "He wanted me to say I bit him. I didn't bite him. [He] did that jumping over the fence and . . . trac[ing] the spoon on [his] hand." *Id.* at 70:17–71:4. After the hospital released Plaintiff, he was taken to the police station and arraigned. *See id.* at 54:17–22. Plaintiff was taken to the county jail the next day. *Id.*

B. <u>Defendant Officer English's Account[2]</u>

Defendant Officer English maintains that he first encountered Plaintiff while driving down East 18th Street in his police car. Def. Officer English's 56.1 Stmt. ¶ 1. At that moment, Plaintiff was on the sidewalk carrying a leaf blower. *Id.* As Officer English approached Plaintiff, he noted that his presence made Plaintiff nervous. *Id.* Officer English asked Plaintiff if he lived in the area. *Id.* Plaintiff answered "no." *Id.* Officer English then advised Plaintiff that he had more questions. *Id.* Rather than answer them, Plaintiff got on his bicycle with the leaf

---

[2] Defendant Officer English's account is drawn from his Section 56.1 Statement.

3

blower and rode down 18th Street. *Id.* at ¶ 2. Plaintiff ignored Officer English's order to stop, and Officer English pursued Plaintiff. *Id.* at ¶¶ 2-3. During the pursuit, Plaintiff dropped his bicycle and leaf blower in a vacant lot and ran. *Id.* at ¶ 3. He then jumped over a fence and ran through private yards. *Id.* Officer English reported his location and a description of Plaintiff to police dispatch while pursuing Plaintiff. *Id.*

Eventually, Officer English caught up with Plaintiff in a vacant lot and attempted to arrest him. *Id.* at ¶ 4. Plaintiff resisted arrest and, as a result, there was a brief struggle between them. *Id.* During the struggle, they both fell to the ground. *Id.* Plaintiff bit Officer English's wrist and scratched his arm while attempting to escape his grasp. Hunt Certification, Ex. G, Def. Officer English's Offense Report, ECF No. 45. Plaintiff sustained "a minor laceration to his head which appear[ed] to be caused by a jagged rock he struck when tackled to the ground." *Id.* St. Joseph's Hospital subsequently treated Plaintiff and Officer English's injuries. *Id.* Thereafter, Plaintiff was charged with aggravated assault, resisting arrest, and trespassing. *Id.*

C.  Procedural Background

Plaintiff filed this § 1983 action against Defendants in the Superior Court of New Jersey, Passaic County, on February 24, 2011. State Ct. Compl., ECF No. 1-1. Plaintiff proceeds *pro se* and is currently a prisoner at South Woods State Prison in Bridgeton, New Jersey. Defendants removed this action to this Court on June 1, 2011. Notice of Removal, ECF No. 1. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Defendants now motion for summary judgment. Def. City of Paterson's Mot. for Summ. J., ECF No. 44; Def. Officer English's Mot. for Summ. J., ECF No. 45.

II.  **LEGAL STANDARD**

A court shall grant summary judgment under Rule 56 of the Federal Rules of Civil Procedure if the materials in the record show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a summary judgment motion, the moving party must first show that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to present evidence that a genuine dispute of material fact compels a trial. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (citations omitted). To do so, the nonmoving party must offer specific facts that establish such an issue, and may not simply rely on unsupported assertions, bare allegations, or speculation. *Id.* (citation omitted). The Court must consider all facts and the reasonable inferences therefrom in the light most favorable to the nonmoving party. *Pennsylvania Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

## III. DISCUSSION

The Court begins by noting that Plaintiff's Complaint alleges that Defendant Officer English unnecessarily hit Plaintiff's head with his police radio causing "a deep laceration that required medical attention and several staples to close the wound." Since Plaintiff proceeds *pro se*, the Court must liberally construe his Complaint. *See, e.g., Higgs v. Attorney Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) (citations omitted) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."). This obligation requires the Court "to apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (citing *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003)). Accordingly, the Court construes Plaintiff's Complaint as claiming that Officer English used excessive force to arrest Plaintiff and, thus, violated Plaintiff's Fourth Amendment

5

right to be free from unreasonable seizure. The Court also construes Plaintiff's Complaint as claiming that Defendant City of Paterson's complicity resulted in said constitutional violation. This Court assesses both claims pursuant to 42 U.S.C. § 1983.[3]

To recover under § 1983, Plaintiff "must establish that the defendant acted under color of state law to deprive [him] of a right secured by the Constitution." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (citations omitted). Here, the parties do not dispute that Officer English acted under color of state law as an officer of the Paterson Police Department. At issue is whether there are genuine disputes of material fact concerning Officer English's purported violation of Plaintiff's Fourth Amendment right to be free from unreasonable seizure and the City of Paterson's role in said violation.

A. Plaintiff's Fourth Amendment Claim Against Defendant Officer English

The Supreme Court has long recognized that an officer's right to make an arrest necessarily carries with it the right to use some degree of force. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)). However, an officer's use of force to effect an arrest is actionable under § 1983 when it is so excessive that it violates the arrestee's Fourth Amendment right to be free from unreasonable seizure. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633-34 (3d Cir. 1995) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 277 (3d Cir. 1990)). Here, Plaintiff contends that Defendant Officer English's actions while arresting him—hitting his head with a police radio or nightstick without warning—passed this threshold. *See* Pl.'s Opp'n Br. 1, ECF No. 49. Conversely, Officer English maintains that

---

[3] Section 1983 provides a remedy for the violation of constitutional rights. *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985) (plurality opinion). It provides:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

6

this Court should grant summary judgment in his favor because he is entitled to qualified immunity. Def. Officer English's Br. 9-11. ECF No. 45.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation . . . ." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Its availability to an officer hinges on two questions. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The first question—the constitutional question—is "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson*, 555 U.S. at 232 (citations omitted); *Southerland v. Pa.*, 389 Fed. App'x 166, 170 (3d Cir. 2010). The second question—the qualified immunity question—is "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232 (citation omitted); *Southerland*, 389 Fed. App'x at 170. The Court may consider these questions in either order. *Pearson*, 555 U.S. at 236. The Court first addresses the constitutional question.

1. The Constitutional Question: Whether Defendant Officer English Violated Plaintiff's Fourth Amendment Right to be Free From Unreasonable Seizure

Whether an officer's use of force against an arrestee is excessive and, thereby, violates the arrestee's constitutional rights turns on "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances" known to the officer. *Graham*, 490 U.S. at 397 (citations omitted); *see also Maryland v. Garrison*, 480 U.S. 79, 85 (1987) ("[W]e must judge the constitutionality of [the officers'] conduct in light of the information available to them at the time they acted."). At bottom, the constitutional question "focuses on the factual circumstances of the incident and asks whether the officer made a reasonable mistake of fact." *Curley v. Klem*, 499 F.3d 199, 215 (3d Cir. 2007). "A mistake of fact is an officer's

7

misperception of the circumstances by which he is surrounded." *Southerland*, 389 Fed. App'x at 170 (citations omitted). Relevant factual circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985). In assessing the relevant factual circumstances, this Court must consider them and the reasonable inferences therefrom in the light most favorable to Plaintiff, the nonmovant. *Curley*, 499 F.3d at 203; *see also Scott v. Harris*, 550 U.S. 372, 378 (2007) ("In qualified immunity cases [on summary judgment], this usually means adopting . . . plaintiff's version of facts.").

This Court begins by considering the severity of the crime at issue and whether Plaintiff attempted to evade arrest by flight. Here, Plaintiff admits that he attempted to flee from Officer English and, hence, resisted arrest. Pl.'s Decl. ¶ 5. Plaintiff's admission, however, is not dispositive. *See Groman*, 47 F.3d at 634 (concluding that resisting arrest was not a particularly severe offense given the facts of that case). Plaintiff's attempt to flee certainly did not afford Officer English the right to restrain Plaintiff by any and all means. *See Garner*, 471 U.S. at 11 ("A police officer may not seize an unarmed, nondangerous suspect by shooting him dead."). The Court, accordingly, considers Officer English's reaction to Plaintiff's flight together with the immediate threat that Plaintiff posed to Officer English and others. *See Abraham v. Raso*, 183 F.3d 279, 289 (3d Cir. 1999) ("How much force is permissible to effectuate an arrest . . . is determined based on the 'totality of the circumstances.'")

Plaintiff has sworn to five material facts which, if believed, could lead a reasonable jury to conclude that Plaintiff posed no threat to Officer English or others and that Officer English used excessive force to restrain Plaintiff. First, Plaintiff testified that he did not touch Officer

English and that there was no physical struggle between them. Pl. Dep. 50:14–20. Relatedly, there is no evidence in the record suggesting that Officer English had a reason to believe that Plaintiff was armed. Second, Plaintiff testified that Officer English provided no warning before striking his head. *See id.* at 43:18–20. Third, the magnitude of Officer English's strikes to Plaintiff's head caused severe lacerations that required stiches. Pl.'s Decl. ¶¶ 7-8. Fourth, Officer Otero was available as backup at the scene at the time. Pl. Dep. 46:17– 19. Thus, help was then available to Officer English had he resorted to less intrusive means to apprehend Plaintiff. Finally, Plaintiff testified that Officer English resorted to a particularly jarring method to restrain Plaintiff—striking his head twice with a police radio or nightstick. Pl. Dep. 45:23–46:1; *see, e.g., Baker v. City of Hamilton*, 471 F.3d 601, 609 (6th Cir. 2006) (finding it "significant" in § 1983 excessive force claim that defendant officer struck plaintiff's head). Plaintiff testified that Officer English's first strike to his head left him dazed and on the ground and that Officer English, nonetheless, struck his head a second time. Pl. Dep. 45:17–21. This testimony, if credited, could lead a reasonable jury to conclude that Officer English's second strike to Plaintiff's head was unnecessary and, therefore, excessive. *See, e.g., Baker*, 471 F.3d at 607 (citations omitted) ("[A] jury could find that [defendant officer] acted unreasonably in striking [plaintiff's] knee after [he] had fallen to the ground. We have held repeatedly that the use of force after a suspect has been incapacitated or neutralized is excessive as a matter of law."); *cf. Green v. New Jersey State Police*, 246 Fed. App'x 158, 161-62 (3d Cir. 2007) (concluding that it would not have been reasonable for an officer to twice hit an arrestee's head with a flashlight, causing lacerations that required stiches, when he refused to exit a police car). The Court next addresses the qualified immunity question.

> 2. The Qualified Immunity Question: Whether Plaintiff's Fourth Amendment Right to be Free From Unreasonable Seizure Was Clearly

### Established at the Time of Defendant Officer English's Alleged Misconduct

The Supreme Court has explained that "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, --- U.S. ---, 131 S. Ct. 2074, 2083 (2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citations omitted). This does not require "'precise factual correspondence' between the case at issue and a previous case . . . ." *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004) (citation omitted). As this inquiry is focused on established legal standards and requires a review of relevant case law, it "is a question of law that is exclusively reserved for the court." *Curley*, 499 F.3d at 211 n. 12. However, "when qualified immunity depends on disputed issues of fact, those issues must be determined by the jury." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006) (citation omitted).

Here, the Court finds that a reasonable officer in Officer English's shoes on September 9, 2010, would have perceived federal law as precluding him from using a police radio or nightstick to strike Plaintiff's head a second time after he fell to the ground. The Third Circuit has suggested that a reasonable officer would know that it is excessive to hit an arrestee's head twice with a blunt instrument. *Green*, 246 Fed. App'x at 163 (citations omitted) (noting that officer, "to his credit, even acknowledged that striking [arrestee] on the head with a flashlight would have been 'inappropriate,' and would have constituted excessive force; he explained, in fact, that such an action would constitute 'deadly force.'"). The Sixth Circuit has likewise concluded that arrestees have "a constitutional right to be free from gratuitous strikes to the head and knee."

10

*Baker*, 471 F.3d at 608; *see also McDowell v. Rogers*, 863 F.2d 1302, 1307 (6th Cir. 1988) ("[O]ur court has repeatedly found that a totally gratuitous blow with a policeman's nightstick may cross the constitutional line...."). Lastly, the Eleventh Circuit has concluded that a reasonable officer would not violently strike an arrestee's head with a blunt instrument if there was no indication that the arrestee could escape, even when confronted by a hostile crowd. *See Baltimore v. City of Albany, Georgia*, 183 Fed. App'x 891, 899 (11th Cir. 2006). Accordingly, Defendant Officer English is not entitled to qualified immunity at this time.

B. Plaintiff's Fourth Amendment Claim Against Defendant City of Paterson

Although the City of Paterson is named as a defendant in Plaintiff's Complaint, Plaintiff articulated no claims against it therein. In the interest of justice, this Court closely reviewed Plaintiff's deposition to determine the substance of Plaintiff's claim against the City of Paterson. Plaintiff testified that the City of Paterson is a defendant in this case because it employed Officer English. Pl. Dep. 69:15–21. In *Monell v. Department of Social Services of the City of New York*, the Supreme Court held "that a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. 658, 691 (1978) (emphasis in original). Since Plaintiff's claim against the City of Paterson is founded on a *respondeat theory*, Defendant City of Paterson is entitled to summary judgment.

IV. CONCLUSION

For the reasons discussed herein, the Court GRANTS Defendant City of Paterson's motion for summary judgment and DENIES Defendant Officer English's motion for summary judgment.

An appropriate Order accompanies this Opinion.

DATED: 31 of October, 2013.

                                                                                                                             _____
                                                                                                                             JOSE L. LINARES
                                                                                                                             U.S. DISTRICT JUDGE